UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) 1:19-cr-146 |
| v. | ) |
| | ) Judge Mattice/Steger |
| KARIM SADRUDDIN | ) |
| and | ) |
| RAHIM SADRUDDIN | ) |

## INFORMATION

### COUNTS ONE THROUGH TWO
### WIRE FRAUD
### (18 U.S.C. § 1343)

**THE UNITED STATES ATTORNEY CHARGES THAT:**

**AT ALL TIMES MATERIAL HEREIN:**

The defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, controlled and operated various business entities, including Master Group USA LLC (MGUSA), Textile Corporation of America LLC (TCA), and Textile Mill Direct Inc. (TMD). Business bank accounts for these entities, as well as some of the personal accounts for the defendants and their wives, were maintained at Regions Bank. Defendant KARIM SADRUDDIN and his wife also controlled a business entity called Service At Convenience LLC (SAC) and maintained a business account for SAC at Wells Fargo Bank. Defendant KARIM SADRUDDIN and his wife also maintained personal accounts at Fifth Third Bank. Defendant RAHIM SADRUDDIN's wife maintained personal accounts at SunTrust Bank.

Bledsoe County is an economically distressed county with the second highest jobless rate of all 95 counties in the state of Tennessee.

Page **1** of 19

The State of Tennessee's Department of Economic and Community Development (ECD) is an entity that seeks to attract corporate investment into the state and works with companies to facilitate economic growth and create new jobs.

The Bledsoe County Industrial Development Board (IDB) is a Non-profit Corporation established for the purpose of expanding job opportunities and attracting new industries and investments throughout the county.

The Southeast Tennessee Development District (SETD) is an entity that provides staffing resources to local governments and delivers programs and services for community and economic development to southeast Tennessee by utilizing local, state, federal, and private funds.

The Federal Emergency Management Agency (FEMA) is an entity of the United States government as part of the Department of Homeland Security and was established to coordinate disaster responses in the United States that have overwhelmed the resources of state and local governments.

The Tennessee Valley Authority (TVA) is an entity owned by the United States government which was created to provide navigation, flood control, electricity generation, fertilizer manufacturing, and economic development to the Tennessee Valley, which includes Bledsoe County, Tennessee. Among other functions, the TVA invests in competitive economic development and job growth in the Tennessee Valley region through performance grant program projects.

Starting in or about April 2017, the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, doing business as TCA, obtained a grant from ECD, via the IDB, for the

purpose of establishing a textile manufacturing plant in Pikeville, Tennessee, in the Eastern District of Tennessee. The IDB engaged the services of the SETD to assist in administering the grant.

In or about July 2017, ECD approved the $3 million grant that was to be used for the purchase and renovation of the building. Grant funds were not advanced to TCA for the purchase and renovation of the building. Instead, TCA had to buy the building with its own funds, or pay for an approved expense associated with the renovation of the building, and then submit a claim for reimbursement by providing an invoice and proof of payment. TCA engaged the services of Cagle Development to assist with the initial purchase and subsequent renovation work on the building.

From on or about August 30, 2017, until on or about September 13, 2017, Hurricane Irma, a Category 5 hurricane, made landfall in various islands in the Caribbean Sea, Cuba, Dominica, Puerto Rico, the contiguous United States, and elsewhere, and caused approximately $64 billion of damage while killing over 100 people.

From on or about September 18, 2017, until on or about October 2, 2017, Hurricane Maria, a Category 5 hurricane, made landfall in Puerto Rico, the U.S. Virgin Islands, Dominica, and elsewhere, and caused approximately $91 billion of damage while killing over 3,000 people.

On or about September 27, 2017, the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, doing business as MGUSA, submitted an initial bid to FEMA to provide tarps for hurricane relief, which they then amended on or about November 3, 2017, after FEMA altered the compliance terms to include a requirement to obtain tarps only from Trade Agreements Act (TAA)-compliant countries.

On or about November 9, 2017, the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, doing business as MGUSA, were awarded a $30.7 million contract with FEMA to deliver 475,000 self-help tarps to victims, such as those in Puerto Rico, affected by the 2017 hurricanes. The contract required (1) that the tarps meet size and material specifications, and (2) that the tarps be in compliance with the TAA which prohibited tarps manufactured in China, among other countries. Between on or about November 24, 2017, until on or about January 26, 2018, the defendants delivered approximately 58,000 tarps before FEMA issued a stop work order. MGUSA received payment from FEMA in the amount of approximately $3.7 million.

In or about July 2018, the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, doing business as TCA, obtained a $230,000 performance grant from the TVA, an entity owned by the United States government, for having established a commercially operable plant at the Pikeville, Tennessee facility for the purpose of manufacturing textiles.

**THE SCHEME TO DEFRAUD**:

Beginning in or about April 2017, and continuing until in or about January 2019, in the Eastern District of Tennessee and elsewhere, the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, aided and abetted by one another and others, devised and intended to devise a scheme and artifice to defraud the government of the United States and others and to obtain money and property by means of false and fraudulent pretenses, representations and promises. The scheme and artifice to defraud and to obtain money so devised and intended to be devised by the defendants was in substance as follows:

It was part of the scheme to defraud that the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, aided and abetted by one another and others, in or about April 2017 met

with representatives of ECD, TVA, and others, regarding economic incentives such as grants which may be available from these organizations for the proposed textile manufacturing plant, and during this meeting, the defendants, for the purpose of obtaining the grants, falsely represented: 1) that they would employ approximately 1,000 people, of which about 765 would work in production, as part of the textile manufacturing operation, and 2) that there would be a capital investment into the Pikeville business of $18 to $21 million. These misrepresentations, and others, led to TVA committing to a $230,000 performance grant on or about June 23, 2017, if the defendants qualified for the grant by meeting the following requirements: 1) there was a capital investment of approximately $27 million, 2) approximately 1,000 people would be employed, and 3) the company was commercially operational prior to receiving the performance grant.

It was further part of the scheme to defraud that the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, aided and abetted by one another and others, in or about May 2017, submitted an application on behalf of TCA to obtain the award of $3 million in reimbursable grant funds from ECD for the purpose of establishing a textile manufacturing plant in Pikeville, Tennessee, in the Eastern District of Tennessee. In that application, the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, aided and abetted by one another and others, for the purpose of obtaining the grant, falsely represented: 1) that they would employ approximately 1,000 people as part of the textile manufacturing operation, 2) that TCA was a subsidiary company of a large, Pakistan-based textile company, and 3) that they or their parent company would invest approximately $27 million into the project.

It was further part of the scheme to defraud that the defendants, KARIM SADRUDDIN

and RAHIM SADRUDDIN, aided and abetted by one another and others, on or about July 7, 2017, obtained an $850,000 loan for the purchase of the building, promising the lender a $100,000 fee for making the loan. The loan was coordinated by Cagle Development, a company with which the defendants had engaged to perform the renovation work on the building.

It was further part of the scheme to defraud that the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, aided and abetted by one another and others, on or about September 27, 2017, submitted a bid for a FEMA contract to supply tarps to hurricane victims.

It was further part of the scheme to defraud that the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, aided and abetted by one another and others, acting on behalf of MGUSA, on or about November 3, 2017, submitted an amended bid for the FEMA contract falsely representing that the tarps would be manufactured in a TAA-compliant country while knowing that the tarps would be manufactured in China – a country that was not TAA-compliant. This amended bid resulted in FEMA awarding the contract to MGUSA on or about November 9, 2017.

It was further part of the scheme to defraud that on or about October 3, 2017, the defendant, KARIM SADRUDDIN, emailed to SETD, defendant RAHIM SADRUDDIN, and another in the Eastern District of Tennessee and elsewhere, a fraudulent wire transfer record and a fraudulent invoice valued at approximately $1.4 million purporting to reflect work that had been done on the building and a record reflecting the cost of the purchase of the building valued at $850,000. This email resulted in a disbursement of funds, on or about November 9, 2017, via checks totaling $2,256,900 from the IDB to defendant KARIM SADRUDDIN, which he later deposited into TCA's Regions Bank account in Suwanee, Georgia and which the defendants,

Page 6 of 19

Case 1:19-cr-00146-HSM-CHS   Document 1   Filed 10/22/19   Page 6 of 19   PageID #: 6

KARIM SADRUDDIN and RAHIM SADRUDDIN, later used portions of to purchase tarps in the continuation of the scheme to defraud FEMA.

It was further part of the scheme to defraud that the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, aided and abetted by one another and others, acting on behalf of MGUSA, on or about November 15, 2017, caused $950,000 to be disbursed from the TCA Regions Bank account in Atlanta, Georgia, to the lender via the Cagle Development bank account at SunTrust Bank in the Eastern District of Tennessee to repay the loan for the purchase of the building in Pikeville, Tennessee.

It was further part of the scheme to defraud that the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, aided and abetted by one another and others, acting on behalf of MGUSA, beginning on or about November 16, 2017, and continuing until on or about November 20, 2017, transferred approximately $480,000 of the fraudulently obtained ECD grant funds from TCA's Regions Bank account into MGUSA Regions Bank account.

It was further part of the scheme to defraud that the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, aided and abetted by one another and others, acting on behalf of MGUSA, beginning on or about November 16, 2017, and continuing until on or about November 20, 2017, used approximately $316,000 from MGUSA's Regions Bank account to purchase tarps that had been manufactured in China from distributors inside and outside the United States.

It was further part of the scheme to defraud that the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, aided and abetted by one another and others, acting on behalf of MGUSA, beginning on or about November 24, 2017, and continuing until on or about January 25, 2018, caused approximately 58,000 tarps manufactured in China that did not meet FEMA

contract specifications to be delivered to Puerto Rico and elsewhere and resulted in the payment of approximately $3.7 million from FEMA into MGUSA's Regions Bank account.

It was further part of the scheme to defraud that the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, aided and abetted by one another and others, acting on behalf of MGUSA, beginning on or about November 23, 2017, and continuing until on or about March 8, 2018, provided a fraudulent bill of lading and wire transfer record to FEMA falsely representing that the tarps had been manufactured and shipped from a TAA-compliant country when in fact, the defendants knew that the tarps had been manufactured and shipped from China.

It was further part of the scheme to defraud that on or about January 8, 2018, the defendant, KARIM SADRUDDIN, caused $54,500 to be wired from TMD's Regions Bank account to the account of an automobile dealer in Alabama for the purchase of a white 2017 Ford F150 pickup truck, VIN 1FTEW1EG1HFB85829, and the wire transfer consisted of funds fraudulently obtained from FEMA and the ECD grant.

It was further part of the scheme to defraud that on or about January 9, 2018, the defendant, RAHIM SADRUDDIN, sent to a representative of TVA, in the Eastern District of Tennessee, an email in which the defendant falsely represented that Pikeville plant was in operation from this week onwards, and inquired about the TVA grant funds.

It was further part of the scheme to defraud that from on or about January 3, 2018, to on or about March 23, 2018, the defendant, KARIM SADRUDDIN, caused $530,000 of funds fraudulently obtained from FEMA and the ECD grant to be wired from the accounts of TCA and MGUSA to the account of AK Textile Mills at a bank in Pakistan. From May 14, 2018, to July 31, 2018, four wire transfers totaling $439,838 were wired from this same Pakistan bank account

to the Fifth Third Bank account of KARIM SADRUDDIN and his wife, account ending in 7623. From May 21, 2018, to June 13, 2018, a total of $243,918.50 was transferred from Fifth Third Bank account ending in 7623 to the Fifth Third Bank account of KARIM SADRUDDIN and his wife, account ending in 5625; and on June 28, 2018, a $243,953.22 cashier's check purchased with funds in Fifth Third Bank account ending in 5625 was deposited to the Fifth Third Bank account of KARIM SADRUDDIN's wife, account ending in 6407. On June 28, 2018, a $147,436.91 cashier's check purchased with funds in Fifth Third Bank account ending in 7623 was deposited to the Fifth Third Bank account of KARIM SADRUDDIN's wife, account ending in 6407; and on July 31, 2018, $40,000 was transferred from Fifth Third Bank account ending in 7623 to Fifth Third Bank account ending in 6407, for a total of $431,390.13 deposited to Fifth Third Bank account ending in 6407.

It was further part of the scheme to defraud that on or about January 8, 2018, the defendant, RAHIM SADRUDDIN, caused $552,474 of funds fraudulently obtained from FEMA to be wired from the Regions Bank account of MGUSA to the account of Mushtaq Ramzan Trading LLC at a bank in Dubai. On May 15, 2018, and June 11, 2018, funds totaling $399,925.68 were wired from this same Dubai bank account to the SunTrust Bank account of RAHIM SADURDDIN's wife, account ending in 9351. On June 18, 2018, a total of $397,000 was transferred from SunTrust Bank account ending in 9351 to the SunTrust Bank account of RAHIM SADRUDDIN's wife, account ending in 8758, and from September 25, 2018, to November 7, 2018, a total of $18,600 was transferred from SunTrust Bank account ending in 8758 to the SunTrust Bank account of RAHIM SADRUDDIN's wife, account ending in 4083.

It was further part of the scheme to defraud that on or about March 21, 2018, the

defendant, KARIM SADRUDDIN, caused $202,000 of funds fraudulently obtained from FEMA and deposited to the Regions Bank account of MGUSA, to be withdrawn from the MGUSA account and deposited to the account of SAC at Wells Fargo Bank, account ending in 0655; and on July 30, 2018, the defendant, KARIM SADRUDDIN, also caused $100,000 of funds fraudulently obtained from TVA and deposited to the Regions Bank account of TCA, to be transferred to SAC's Wells Fargo Bank account ending 0655.

It was further part of the scheme to defraud that on or about May 4, 2018, the defendant, RAHIM SADRUDDIN, sent to a representative of TVA, in the Eastern District of Tennessee, an email in which the defendant falsely represented that the Pikeville plant had achieved commercial operations as a textile manufacturing plant, that the plant construction was complete, that testing was complete, and that the plant was regularly producing goods for sale.

It was further part of the scheme to defraud that on May 29, 2018, the defendant, RAHIM SADRUDDIN, sent to a representative of TVA, in the Eastern District of Tennessee, an email in which the defendant falsely represented that the $230,000 grant would be used for purchasing, installing, or upgrading software, computer, interior fixtures, equipment, machinery, or materials for existing facilities; when in fact, the defendants transferred virtually all of the grant funds from the TCA bank account to their personal and other business bank accounts, and then utilized the funds to pay apartment rent, to purchase their personal residences, and to pay other personal and business expenses not related to the operations of TCA.

It was further part of the scheme to defraud that on June 13, 2018, the defendant, RAHIM SADRUDDIN, sent to a representative of TVA, in the Eastern District of Tennessee, an email with an attached TVA Performance Grant Agreement, signed by defendant KARIM

SADRUDDIN, which falsely represented that prior to April 1, 2018, the defendants had already invested $17 million of their total $27 million investment in the Pikeville manufacturing facility. On the same day, the defendant, RAHIM SADRUDDIN, sent to a representative of TVA, in the Eastern District of Tennessee, a second email with an attached Commercial Operation Date Certification, signed by defendant KARIM SADRUDDIN, which falsely certified that TCA's Pikeville facility had achieved commercial operation on March 1, 2018. These two emails caused TVA to electronically transfer $230,000 in grant proceeds on July 2, 2018, from a TVA bank account located in the Eastern District of Tennessee, to a TCA account at Regions Bank controlled by the defendants and located in the State of Georgia.

**THE EXECUTION**:

The United States Attorney re-alleges and incorporates by reference the above paragraphs of this Information as if fully set forth herein. On or about the dates set forth below in the Eastern District of Tennessee and elsewhere, the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, aided and abetted by one another and others, for the purpose of executing the aforesaid scheme and artifice to defraud the United States, in relation to a presidentially declared major disaster and emergency, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| Count | On or about | Description of wire communication | Victim |
|---|---|---|---|
| 1 | October 3, 2017 | email to SETD resulting in issuance of checks valued at $2,256,900. | FEMA |
| 2 | June 13, 2018 | email to TVA resulting in July 2, 2018, electronic fund transfer valued at $230,000. | TVA |

All in violation of Title 18, United States Code, Sections 1343 and 2.

# COUNT THREE
## MONEY LAUNDERING CONSPIRACY
### (18 U.S.C. § 1956(h) and 1957)

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

A. <u>AT ALL TIMES MATERIAL HEREIN</u>:

The United States Attorney re-alleges and incorporates by reference the allegations set forth in Counts One and Two.

B. <u>THE MONEY LAUNDERING CONSPIRACY</u>:

Beginning in or about April 2017, and continuing until in or about January 2019, in the Eastern District of Tennessee and elsewhere, defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, did knowingly combine, conspire and agree with each other and with others known and unknown to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, that is: to knowingly engage and attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Sections 1956(h) and 1957.

[FORFEITURE ALLEGATIONS CONTAINED ON NEXT PAGE]

## WIRE FRAUD FORFEITURE ALLEGATIONS

1. The allegations contained in Counts One and Two of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The properties to be forfeited include, but are not limited to, the following:

**BANK ACCOUNTS**

a) Funds up to the amount of $808.70 in account number ending in 9351 at SunTrust Bank, account name Fatima Sadruddin;

b) Funds up to the amount of $129,080.98 in account number ending in 8758 at SunTrust Bank, account name Fatima Sadruddin;

c) Funds up to the amount of $1,003.01 in account number ending in 4083 at SunTrust Bank, account name Fatima Sadruddin "Grocery";

d) Funds up to the amount of $1,700.11 in account number ending in 0655 at Wells Fargo Bank, account name Service At Convenience LLC;

e) Funds up to the amount of $303.73 in the account of Karim or Rehana K. Sadruddin at Fifth Third Bank, account number ending in 7623; and

f) Funds up to the amount of $.91 in the account of Rehana K. Sadruddin at Fifth Third Bank, account number ending in 6407.

## REAL PROPERTIES

a) Real property having a mailing address of 6385 Bellmoore Park Lane, Johns Creek, Georgia 30097, with all appurtenances, improvements, and attachments thereon, which is more fully identified and more particularly described below:

All that tract or parcel of land lying and being in Land Lot 417 of the 1st District, 1st Section, Fulton County, Georgia being Lot 241, The Palisades at Bellmoore Park - Phase II, as shown on plat recorded in Plat Book 380, pages 106-114, Fulton County, Georgia records, which said plat being incorporated herein by reference thereto.

For further reference see Limited Warranty Deed filed and recorded on June 2, 2017, in Deed Book 57578, Page 501, in the Clerk of Superior Court for Fulton County, Georgia, Instrument Number 2017-0195292.

b) Real property having a mailing address of 11205 Olbrich Trail, Johns Creek, Georgia 30097, with all appurtenances, improvements, and attachments thereon, which is more fully identified and more particularly described below:

All that tract of parcel of land lying and being in Land Lot 417 and 418 of the 1st District, 1st Section, Fulton County, Georgia being Lot 200, The Palisades at Bellmoore Park – Phase III, as shown on plat recorded in Plat Book 387, Pages 69-79, Fulton County, Georgia records.

For further reference see Deed Book 59083, page 208, filed and recorded August 3, 2018 in the Clerk of Superior Court for Fulton County, Georgia, Instrument Number 2018-0217292.

c) Real property having a mailing address of 132 Ferro Street, Pikeville, TN 37367, with all appurtenances, improvements, and attachments thereon, which is more fully identified and more particularly described below:

To find the true point of beginning, begin at the intersection of the Westerly line of Bledsoe Recreation Center property with the Southern right of way line of Cleveland Street and go, thence South 44°23'17" West and along the Westerly line of Bledsoe Recreation Center property a distance of 755.08 feet to a point; thence South 49°10'55" East along the Southerly line of the Bledsoe Recreation Center property a distance of 778.65 feet to fence corner, said corner also being the Southeast corner of the Bledsoe Recreation Center; thence South 49°4'21" East a distance of 587.73 feet to a point in the Western right of way line of "C" Street; thence South 49°10'39" West along the Western right-of-way line of "C" Street a distance of 156.75 feet to a point; thence North 48°34'21"

West and leaving said right of way line a distance of 33.0 feet to a point; thence South 44°9'20" West a distance of 213.66 feet to a wood fence post; thence North 37°17'7" West a distance of 156.96 feet to a fence post; thence South 49°45'17" West a distance of 235.90 feet to a wood fence post; thence 46°53'59" West a distance of 235.90 feet to a wood fence post; thence 46°53'59" West a distance of 1,177.97 feet to a point; thence North 48°20'49" East a distance of 527.47 feet to the Point of Beginning.

Being the same property conveyed to the Grantor by deed of record in Book RB304, Page 108, Register's Office, Bledsoe County, Tennessee.

For further reference see Warranty Deed filed and recorded on July 7, 2017, in Deed Book RB313, Pages 443-448, in the Register of Deed's Office of Bledsoe County, Tennessee, Instrument Number 17115404.

**MONEY JUDGMENT**

A personal money judgment in favor of the United States and against the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, which represents the proceeds the defendants personally obtained as a result of an offense in violation of Title 18, United States Code, Section 1343.

3. Pursuant to Title 21, United States Code, Section 853(p), the defendants shall forfeit substitute property, up to the value of the property subject to forfeiture, if by any act or omission of any of the defendants, said property, or any portion thereof:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred, sold to, or deposited with a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

# MONEY LAUNDERING FORFEITURE ALLEGATIONS

1. The allegations contained in Count Three of this Information are hereby re-alleged and incorporated by reference for the purpose of forfeiture pursuant to Title 18, United States Code, Section 982(a)(1).

2. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1956(h) and 1957, the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. The properties to be forfeited include, but are not limited to, the following:

**BANK ACCOUNTS**

a) Funds up to the amount of $808.70 in account number ending in 9351 at SunTrust Bank, account name Fatima Sadruddin;

b) Funds up to the amount of $129,080.98 in account number ending in 8758 at SunTrust Bank, account name Fatima Sadruddin;

c) Funds up to the amount of $1,003.01 in account number ending in 4083 at SunTrust Bank, account name Fatima Sadruddin "Grocery";

d) Funds up to the amount of $1,700.11 in account number ending in 0655 at Wells Fargo Bank, account name Service At Convenience LLC;

e) Funds up to the amount of $303.73 in the account of Karim or Rehana K. Sadruddin at Fifth Third Bank, account number ending in 7623; and

f) Funds up to the amount of $.91 in the account of Rehana K. Sadruddin at Fifth Third Bank, account number ending in 6407.

**CONVEYANCES**

A white 2017 Ford F-150 pickup truck, VIN 1FTEW1EG1HFB85829 which was seized from KARIM SADRUDDIN.

## REAL PROPERTIES

a) Real property having a mailing address of 6385 Bellmoore Park Lane, Johns Creek, Georgia 30097, with all appurtenances, improvements, and attachments thereon, which is more fully identified and more particularly described below:

All that tract or parcel of land lying and being in Land Lot 417 of the 1st District, 1st Section, Fulton County, Georgia being Lot 241, The Palisades at Bellmoore Park - Phase II, as shown on plat recorded in Plat Book 380, pages 106-114, Fulton County, Georgia records, which said plat being incorporated herein by reference thereto.

For further reference see Limited Warranty Deed filed and recorded on June 2, 2017, in Deed Book 57578, Page 501, in the Clerk of Superior Court for Fulton County, Georgia, Instrument Number 2017-0195292.

b) Real property having a mailing address of 11205 Olbrich Trail, Johns Creek, Georgia 30097, with all appurtenances, improvements, and attachments thereon, which is more fully identified and more particularly described below:

All that tract of parcel of land lying and being in Land Lot 417 and 418 of the 1st District, 1st Section, Fulton County, Georgia being Lot 200, The Palisades at Bellmoore Park – Phase III, as shown on plat recorded in Plat Book 387, Pages 69-79, Fulton County, Georgia records.

For further reference see Deed Book 59083, page 208, filed and recorded August 3, 2018 in the Clerk of Superior Court for Fulton County, Georgia, Instrument Number 2018-0217292.

c) Real property having a mailing address of 132 Ferro Street, Pikeville, TN 37367, with all appurtenances, improvements, and attachments thereon, which is more fully identified and more particularly described below:

To find the true point of beginning, begin at the intersection of the Westerly line of Bledsoe Recreation Center property with the Southern right of way line of Cleveland Street and go, thence South 44°23'17" West and along the Westerly line of Bledsoe Recreation Center property a distance of 755.08 feet to a point; thence South 49°10'55" East along the Southerly line of the Bledsoe Recreation Center property a distance of 778.65 feet to fence corner, said corner also being the Southeast corner of the Bledsoe Recreation Center; thence South 49°4'21" East a distance of 587.73 feet to a point in the Western right of way line of "C" Street; thence South 49°10'39" West along the Western right-of-way line of "C" Street a distance of 156.75 feet to a point; thence North 48°34'21"

West and leaving said right of way line a distance of 33.0 feet to a point; thence South 44°9'20" West a distance of 213.66 feet to a wood fence post; thence North 37°17'7" West a distance of 156.96 feet to a fence post; thence South 49°45'17" West a distance of 235.90 feet to a wood fence post; thence 46°53'59" West a distance of 235.90 feet to a wood fence post; thence 46°53'59" West a distance of 1,177.97 feet to a point; thence North 48°20'49" East a distance of 527.47 feet to the Point of Beginning.

Being the same property conveyed to the Grantor by deed of record in Book RB304, Page 108, Register's Office, Bledsoe County, Tennessee.

For further reference see Warranty Deed filed and recorded on July 7, 2017, in Deed Book RB313, Pages 443-448, in the Register of Deed's Office of Bledsoe County, Tennessee, Instrument Number 17115404.

**MONEY JUDGMENT**

A personal money judgment in favor of the United States and against the defendants, KARIM SADRUDDIN and RAHIM SADRUDDIN, which represents the proceeds involved in an offense in violation of Title 18, United States Code, Sections 1956(h) and 1957, and any proceeds traceable to such an offense.

3. Pursuant to Title 21, United States Code, Section 853(p), the defendants shall forfeit substitute property, up to the value of the property subject to forfeiture, if by any act or omission of any of the defendants, said property, or any portion thereof:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred, sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

J. Douglas Overbey
United States Attorney

By: _____
Steven S. Neff
Assistant U.S. Attorney